UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL THOMAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:20-cv-1641-GMB |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On April 17, 2018, Plaintiff Michael Thomas filed an application for supplemental security income ("SSI") with an alleged disability onset date of September 30, 2017. Thomas' application for benefits initially was denied on September 19, 2018. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 17, 2019 and denied Thomas' claims on October 16, 2019. Thomas requested a review of the ALJ's decision by the Appeals Council, which declined review on August 21, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of October 16, 2019.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Thomas' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 10. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

---

[2] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255

F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Thomas bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?

> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?
> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

Applying the sequential evaluation process, the ALJ found that Thomas had not engaged in substantial gainful activity since his alleged onset date of April 17, 2018 through the date of decision, October 16, 2019. R. 21. At step two, the ALJ found that Thomas suffered from the severe impairments of cognitive disorder due to traumatic brain injury, depression, anxiety, degenerative disc disease, and degenerative joint disease. R. 21.

The ALJ considered the four areas of mental functioning known as "paragraph

B" criteria in finding that Thomas' mental impairments were not severe. R. 21. Specifically, the ALJ found that Thomas had a moderate limitation in all four functional areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing himself. R. 22.

At step three, the ALJ found that Thomas did not have an impairment or combination of impairments meeting or medically equal to the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20. Before proceeding to step four, the ALJ determined that Thomas had the Residual Functional Capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) and § 416.967(b), except that he must

> avoid all hazardous machinery. During a regularly scheduled workday, or the equivalent thereof, individual can: 1. Understand and remember short and simple instructions, but is unable to [do] so with detailed or complex instructions; 2. Do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks; 3. Have no more than occasional contact with the general public, and occasional contact with co-workers; 4. Deal with changes in work place, if introduced occasionally and gradually, and are well-explained; 5. Job duties should deal primarily with things not people; and 6. No math calculations should be required.

R. 23. In reaching this opinion, the ALJ considered Thomas' claimed symptoms and the extent to which his symptoms were reasonably consistent with the objective medical evidence and other evidence in the record. R. 23.

The ALJ determined that Thomas was not able to perform any past relevant work (R. 28), but relied on the opinion of a Vocational Expert ("VE") to find that

> an individual with the claimant's age, education, work experience, and residual functional capacity . . . . would be able to perform the requirements of representative occupations such as garment sorter, DOT Code 222.687-014, light, unskilled, SVP 2, with approximately 45,000 jobs existing in the nation; a laundry sorter, DOT Code 361.687-014, light, unskilled, SVP 2, with approximately 35,000 jobs existing in the nation, [and] a packager, DOT Code 784.687-042, unskilled, SVP 2, with approximately 30,000 jobs existing in the nation.

R. 29. Thus, at the final step of the five-step sequential process, the ALJ found Thomas not to be disabled from April 17, 2018, the alleged onset date, through October 16, 2019, the date of the decision. R. 29–30.

### III.  RELEVANT FACTUAL BACKGROUND

Thomas was born on April 15, 1976, and he was 43 years old on the date of the hearing. R. 42. He has a high school degree and two years of college education. R. 43. Thomas lives at home with his parents. R. 42.

In 2003, Thomas was in a car wreck that that resulted in a traumatic brain injury, a broken collar bone, ten broken ribs, a crushed pelvis, and a bruised and collapsed lung. R. 47, 382. Since the wreck, Thomas has worked at a temp agency, a sporting goods store, and as a traveling merchandiser for a retailing company called Crossmark. R. 43–46. His job with Crossmark lasted for one week and he has not worked since then. R. 43.

Thomas testified that he needed rehabilitation and speech language pathology, and even had to relearn how to walk after his accident. R. 47. He has been diagnosed with anxiety, depression, a panic disorder, and agoraphobia. R. 48, 688. Thomas has been treated for depression, anxiety, and traumatic brain injury ("TBI") at Psychiatry South. R. 24. His Psychiatry South treatment notes indicate that his medications control his anxiety, and he denied experiencing depression as recently as August 6, 2019. R. 718.

Thomas' father reminds him to take his medications because he has trouble remembering them. R. 49, 263. Thomas typically has five "down days" per month when he does not leave the house or assist in household chores. R. 49. On Thomas' better days, he does household chores like taking out the trash and mowing the lawn. R. 50, 263. Thomas has difficulty with simple math calculations and, at times, with verbal communication. R. 48, 264. He tends to isolate himself but does spend time with his girlfriend, shop for groceries, attend sporting events, and communicate on Facebook. R. 48, 51, 264–65.

The ALJ reviewed the objective medical evidence in the record, including treatment notes from Psychiatry South, Dr. Rebecca Jones, Dr. Donald Blanton, and Dr. Robert Estock. R. 24–28. Based on the treatment notes from Psychiatry South, Dr. Blanton, and Dr. Estock, the ALJ found that Thomas had normal judgment, lacked any attention and concentration issues, had symptoms that could be controlled

by medication, and few mental status abnormalities. R. 24–28. Dr. Jones' treatment notes, on the other hand, reported that Thomas had "appetite disturbance, decreased energy, and suicidal thoughts," opined that Thomas had "marked or extreme" limitations in every functional category, and noted three or more episodes of decompensation within 12 months. R. 25. The ALJ determined that Dr. Jones' opinions were not persuasive because they were not consistent with or supported by the objective medical evidence in the record, including her own notes. R. 25.

## IV. DISCUSSION

Thomas argues that the ALJ erred in two ways. First, he claims that the ALJ did not have the constitutional authority to render a decision in his case. Second, he claims that the ALJ lacked substantial evidence to support the finding that Dr. Jones' medical opinion was unpersuasive. Doc. 12 at 8. The Commissioner responds that Thomas' constitutional argument does not entitle him to a rehearing of his case and that the ALJ had substantial evidence supporting his evaluation of Dr. Jones' medical opinion. Doc. 13 at 3, 20. For the following reasons, the court agrees with the Commissioner.

**A.     The ALJ's Constitutional Authority**

Thomas contends that 42 U.S.C. § 902(a)(3)'s "for cause" removal requirement for the Commissioner violates separation-of-powers principles. Doc. 12 at 8–12. He argues that this infirmity requires a new hearing before a different ALJ

because the ALJ and Appeals Council derive constitutionally defective authority from the Commissioner. Doc. 12 at 8–12. The Commissioner concedes that § 902(a)(3) unconstitutionally limits the President's authority to remove the Commissioner but argues that Thomas has not shown that the removal provision caused any harm justifying a remand. Doc. 13 at 3–20.

Assuming without deciding the constitutional infirmity, Thomas' arguments fail. First, the ALJ's appointment in this case was not ratified by former Commissioner Andrew Saul but was instead ratified in July 2018 by then-Acting Commissioner Nancy Berryhill. Doc. 13 at 7. As the Acting Commissioner, Berryhill did not have statutory for-cause protection and could have been removed at will at any time. *See* 42 U.S.C. § 902(b)(4); *Lynch v. Kijakizi*, 2022 WL 3566508, at *8 (S.D. Fla. July 26, 2022). Because § 902(a)(3) did not apply to the Acting Commissioner, Thomas' separation-of-powers argument is inapposite.

Thomas' argument also fails on its merits. The Supreme Court recently addressed challenges based on the Appointments Clause and on the President's removal power. *See Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court concluded that the appropriate remedy for a violation of the Appointments Clause "is a new 'hearing before a properly appointed' official" different from the previous official. *Lucia*, 138 S. Ct. at 2055

(citation omitted). However, in *Collins*, the Court concluded that a new hearing is not necessarily required to cure an unconstitutional for-cause restriction on the President's removal power. *See Collins*, 141 S. Ct. at 1787–88. The Court explained that such a statutory scheme does not automatically void actions when there is no basis to conclude that the relevant official lacked the authority to hold his position. *Id.*; *see also Seila L. LLC*, 140 S. Ct. at 2209. As a result, a new hearing is not the appropriate remedy unless the plaintiff can show a compensable harm, such as by establishing that (1) "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" or (2) "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Collins*, 141 S. Ct. at 1789.

Here, Thomas seeks a new hearing before a different ALJ for a violation of the President's removal power. But to receive a new hearing as a remedy for a removal power violation, *Collins* holds that Thomas must show that he has suffered compensable harm. *See id.* at 1787–88. To that end, Thomas states only that he has been injured because he did not receive a constitutionally valid hearing or adjudication from the ALJ or the Appeals Council. Doc. 14 at 11. These generalized

11

and conclusory allegations do not establish the type of harm *Collins* contemplates.[3] To be sure, Thomas has not shown that the Commissioner who appointed the ALJ failed to fulfill his duties, that there is any link between the ALJ's decision and the allegedly unconstitutional removal provision, or that the President would have removed the Commissioner if not for § 902(a)(3).

Altogether, Thomas fails to demonstrate that the Commissioner's removal protection, even if unconstitutional, requires remand. As Justice Kagan forecasted in *Collins*,

> the majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the [SSA] makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block. But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*Id*. at 1802 (Kagan, J., concurring) (citations omitted). Because Thomas has not established that he has suffered any compensable harm, his constitutional argument fails. *See Herring v. Comm'r of Soc. Sec.*, 2002 WL 2128801, at *5–6 (M.D. Fla.

---

[3] Thomas also highlights President Biden's statements during the former Commissioner's termination in support of his compensable harm argument. However, these statements do not establish that the for-cause provision prevented the President from removing Mr. Saul or prove a nexus between the provision and the ALJ's unfavorable decision.

June 14, 2022); *Watson v. Kijakazi*, 2022 WL 1693388, at *7 (S.D. Fla. May 3, 2022), *adopted*, 2022 WL 1686526 (S.D. Fla. May 26, 2022); *Smith v. Kijakazi*, 2022 WL 1063640, at *8–9 (N.D. Ala. April 8, 2022); *Fernandez v. Kijakazi*, 2022 WL 1642708, at *10 (S.D. Fla. Mar. 24, 2022).

**B.     Dr. Jones' Opinions**

Thomas argues that the ALJ erred in discounting the opinions of his treating physician, Dr. Jones. Doc. 12 at 15–28. The Commissioner argues that the ALJ had substantial evidence to support the finding that Dr. Jones' opinions were not persuasive. Doc. 13 at 20–32. The court agrees with the Commissioner.

On January 18, 2017, the Social Security Administration published final rules titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844). Because these final rules were effective as of March 27, 2017 and Thomas applied for benefits after that date, the new rules apply to his claim. Under 20 C.F.R. § 404.1520c(a), the ALJ need not give deference or assign any specific evidentiary weight to a treating physician's opinion. *See Harner v. Soc. Sec'y Admin., Comm.*, __ F.4th __, 2022 WL 2298528, at *3–4 (11th Cir. June 27, 2022) (affirming that these new regulations eliminate the treating physician rule previously used within the Eleventh Circuit).

Under the applicable regulations, the ALJ may consider the following factors

in reviewing a doctor's opinion: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). While the ALJ must explain how he considered supportability and consistency in his decision, he need not explain how he considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). Moreover, the ALJ is not required to articulate how he considers each medical opinion or prior administrative medical finding; the application of each factor to all of the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1). Here, the ALJ had substantial evidence to assess Dr. Jones' medical opinions as unpersuasive.

Dr. Jones' medical impairment questionnaire stated that Thomas' symptoms include appetite disturbance, decreased energy, and thoughts of suicide (R. 711), but this conclusion is not supported by her own medical records, undermining the reliability of this opinion. *See Simon v. Kijakazi*, 2021 WL 4237618, *5–7 (M.D. Fla. Sept. 17, 2021) (affirming the ALJ's finding that a medical opinion was unpersuasive because it was inconsistent with the doctor's own treatment records and was not supported by the medical record), *Miller v. Kijakazi*, 2021 WL 4190632, *7 (N.D. Ala. Sept. 14, 2021) (affirming the ALJ's finding that the opinion of plaintiff's treating psychiatrist was inconsistent with and unsupported by the medical record and therefore unpersuasive). For example, on June 11, 2019, Dr. Jones noted

that Thomas denied a change in appetite and appeared well-nourished. R. 726. Dr. Jones also noted that Thomas' behavior was calm and cooperative, he denied suicidal ideation, and he had a normal gait and station. R. 726. Dr. Jones likewise reported that Thomas had three or more episodes of decompensation within a 12-month period (R. 714), but her treatment notes do not support this statement. *See, e.g.*, R. 718–51.

Moreover, Dr. Jones' medical opinion is inconsistent with other objective medical evidence in the record. For example, Dr. Donald W. Blanton saw Thomas on September 13, 2018 for a mental evaluation and noted that his energy level was normal, his sleep has been good, and he was not suicidal. R. 696–97. And contrary to Dr. Jones' opinion that Thomas would be unable to "interact appropriately with the general public" (R. 713), Dr. Blanton noted that Thomas assists with housework, drives, has friends and a girlfriend, and spends time at church and playing golf. R. 697. Dr. Robert Estock also found during a psychiatric review on September 17, 2018 that Thomas had a normal energy level and was not suicidal. R. 71. In light of these records, there is substantial evidence supporting the ALJ's conclusion that Dr. Jones' opinions were inconsistent with the objective medical record. And because Dr. Jones' medical opinion was not supported by or consistent with other objective medical evidence in the record, including her own treatment notes, the ALJ did not err in finding her opinion to be unpersuasive.

Therefore, the ALJ had substantial evidence to support his finding that Thomas was not disabled.

## V.  CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on September 6, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE